IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————

**JACOB LAURENCE,**
*Plaintiff/Appellant,*


*v.*


**SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT & POWER DISTRICT,**
*Defendant/Appellee.*

———————

No. CV-21-0292-PR
**Filed April 28, 2023**

———————

Appeal from the Superior Court in Maricopa County
The Honorable David J. Palmer, Judge
No. CV2018-093037

**REVERSED AND REMANDED**

———————

Memorandum Decision of the Court of Appeals,
Division One
No. 1 CA-CV 21-0100
Filed November 9, 2021

**VACATED**

———————

COUNSEL:

David L. Abney (argued), Ahwatukee Legal Office, P.C., Phoenix, and
Maren Tobler Hanson, Nathan Tobler, Tobler Law, P.C., Mesa, Attorneys
for Jacob Laurence

Eric D. Gere (argued), Alexander J. Egbert, Jennings, Strouss & Salmon,
P.L.C., Phoenix, Attorneys for Salt River Project Agricultural Improvement
& Power District

Daniel Rubinov, Rafat H. Abdeljaber, RAJ Law PLLC, Phoenix, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

Nancy L. Davidson, General Counsel, League of Arizona Cities and Towns, Phoenix, Attorneys for Amicus Curiae League of Arizona Cities and Towns, and Nicholas D. Acedo, Struck Love Bojanowski & Acedo, PLC, Chandler, Attorneys for Amicus Curiae Arizona Counties Insurance Pool, Arizona Municipal Risk Retention Pool and Arizona School Risk Retention Trust, Inc.

———————————

VICE CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, JUSTICES MONTGOMERY and PELANDER (Ret.)* joined.   JUSTICE MONTGOMERY authored a concurring Opinion.   JUSTICE LOPEZ authored a dissenting Opinion, in which JUSTICES BEENE and KING joined.

———————————

VICE CHIEF JUSTICE TIMMER, Opinion of the Court:

**¶1**        After the superior court dismisses with prejudice a tort claim against an employee, must the court also dismiss a claim filed against the employer under the respondeat superior doctrine?   It depends.   If the claim against the employee was dismissed for lacking merit, the court must also dismiss the respondeat superior claim.   But if the claim against the employee was dismissed for reasons unrelated to its merits, the respondeat superior claim remains viable.   In arriving at this answer, we overrule in substantial part *DeGraff v. Smith*, 62 Ariz. 261 (1945).[1]

———————————

* Justice Bolick is recused from this matter.   Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

[1] The caption in this case spells the defendant's name "De Graff" while the text uses "DeGraff."   For continuity's sake, we refer to the case as "*DeGraff*."

**BACKGROUND**

¶2        On January 4, 2017, Jacob Laurence and his minor son were injured when a truck owned by Salt River Project Agricultural Improvement & Power District ("SRP") and driven by its employee, John Gabrielson, collided with Laurence's vehicle.   Laurence alleges that Gabrielson's negligent driving caused the accident and that he was driving the SRP truck during the course and scope of his employment. Consequently, Laurence claims SRP is vicariously liable for Gabrielson's negligence under the respondeat superior doctrine.

¶3        Because SRP is a political subdivision of the State of Arizona, A.R.S. § 12-821.01 applies.   *See Hohokam Irrigation & Drainage Dist. v. Ariz. Pub. Serv. Co.*, 204 Ariz. 394, 397 ¶ 6 (2003).   Under that provision, plaintiffs intending to sue a public entity or a public employee must first file a claim with that entity or person within 180 days after the cause of action accrues. § 12-821.01(A).   Laurence filed a timely claim with SRP, but he was unable to file a claim with Gabrielson until nearly fifteen months after the accident.

¶4        On January 3, 2018, Laurence filed this action against SRP and Gabrielson.   Almost immediately, Gabrielson moved for summary judgment based on Laurence's failure to timely comply with § 12-821.01(A). The superior court granted the motion as it pertained to Laurence's claim but denied the motion as it pertained to the son's claim.   Because the son was a minor, he was not required to file a claim until 180 days after turning eighteen, making his claim timely.   *See* § 12-821.01(D).

¶5        SRP then moved for partial summary judgment against Laurence on his respondeat superior claim.   SRP argued that pursuant to *DeGraff* it could not be held vicariously liable for Gabrielson's negligence because the court had granted summary judgment for Gabrielson on that claim.   *See DeGraff*, 62 Ariz. at 270 ("[Servant] having been adjudged as not guilty of any negligence because of the dismissal with prejudice, we hold that the master DeGraff cannot be held liable.").   Laurence responded that because the court had granted summary judgment in favor of Gabrielson for reasons unrelated to the merits of the negligence claim, SRP could be found vicariously liable.   The superior court agreed with SRP and granted its motion.   After the parties settled the remaining claims, the court entered a final judgment, dismissing all claims against SRP and Gabrielson with prejudice.   The court of appeals affirmed.   *Laurence v. Salt River*

*Project Agric. Improvement & Power Dist.*, No. 1 CA-CV 21-0100, 2021 WL 5183957, at *2 ¶ 12 (Ariz. App. Nov. 9, 2021) (mem. decision).

¶6        We granted review of Laurence's petition for review because it raises recurring issues of statewide importance.   We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

### I.

¶7        The issue here is whether the superior court's summary judgment dismissing with prejudice Laurence's claim against Gabrielson required entry of summary judgment for SRP on Laurence's respondeat superior claim.   We review the summary judgment ruling de novo as a matter of law.   *See Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 10 (2021).

### II.

### A.

¶8        Our resolution of this dispute depends on the ongoing viability of *DeGraff*.   As here, *DeGraff* arose from a traffic accident.   The plaintiffs, Virgil and Elizabeth Smith, were injured after driving into the rear of a commercial truck owned by Mollie DeGraff that was stopped at night on the side of a highway without lights or emergency flares.   *DeGraff*, 62 Ariz. at 262.   The Smiths sued DeGraff and her employee, Lloyd Mundee, who was driving the truck immediately before the accident occurred.   *Id.*

¶9        At the close of evidence during the ensuing jury trial, and without explanation, the Smiths moved to voluntarily dismiss their complaint against Mundee.   *Id.* at 263.   When asked, they agreed the dismissal should be "with prejudice" because if they lost the case against DeGraff they could not sue Mundee as a joint tortfeasor, and if they prevailed they had no desire to sue him.   *Id.*   Thereafter, the jury returned a verdict against DeGraff awarding monetary damages to Elizabeth Smith.   *Id.*   DeGraff then moved for a judgment notwithstanding the verdict because the only claim against her was based on respondeat superior and Mundee's dismissal therefore "operated as a bar to the verdict and is res

4

judicata" as to the claim against her. *Id.* The court denied the motion. *Id.*

¶10 DeGraff appealed to this Court, which was then comprised of three justices. *See id.* The determinative issue was whether the dismissal with prejudice of the claim against Mundee barred recovery against DeGraff. *See id.* at 263–64. The two-justice majority first rejected the Smiths' contention that DeGraff was independently liable as Mundee's joint tortfeasor. *See id.* at 264. It concluded that DeGraff's liability was predicated solely on Mundee's negligent actions under the doctrine of respondeat superior. *Id.* at 268. The distinction was legally significant because when an employer and employee are sued for injuries caused by the employee, "a verdict which exonerates the employee from liability for injuries caused solely by the alleged negligence or misfeasance of the employee requires also the exoneration of the employer." *Id.* (quoting 35 Am. Jur. § 534); *accord id.* ("[T]he acquittal of the employee of wrongdoing conclusively negatives liability of the employer.").

¶11 The majority next addressed the consequence of dismissing "with prejudice" a complaint against an employee, as occurred there. *Id.* at 269. Without elaboration, the majority stated "[a] dismissal with prejudice is an adjudication on the merits of the case." *Id.* (quoting 27 C.J.S. *Dismissal and Nonsuit* § 73, at 255 n.89). As additional support, the majority cited *Union Indemnity Co. v. Benton County Lumber Co.*, 18 S.W.2d 327, 330 (Ark. 1929), and *Hargis v. Robinson*, 79 P. 119, 121 (Kan. 1905), each of which concluded that an order dismissing a case against a defendant with prejudice constituted a final disposition of the dispute and barred future action against that defendant. *See DeGraff*, 62 Ariz. at 269.

¶12 The majority then quoted *Dare v. Boss*, 224 P. 646 (Or. 1924), at some length. *DeGraff*, 62 Ariz. at 269–70. The plaintiff in *Dare* sued to recover damages for injuries incurred after a car, owned by Boss Automobile Company and driven by a prospective buyer with an employee-passenger's permission, collided with plaintiff's car. *Dare*, 224 P. at 646. The jury returned a verdict against Boss Automobile Company's partners and the employee-passenger, but jurors erased the prospective buyer's name from the pre-printed verdict form. *Id.* at 647. As quoted in *DeGraff*, the Oregon Supreme Court reversed, reasoning:

> But there is one proposition that makes it necessary to reverse this case, and that is the fact that the jury, in effect, has found

[the prospective buyer], who was driving the car by permission of [the employee], not guilty of negligence in crashing into plaintiff's car, or at least has failed to find on that subject. There could be no negligence except that imputed from the relationship of the parties, and, unless [the prospective buyer] was negligent, no negligence could, under any circumstances, be imputed to the defendant company. That is to say, if the collision was without negligence on the part of the driver of the car, it could not be negligence on the part of any one else. To say that [the prospective buyer] was not negligent is to say that nobody in charge of the car was negligent, because it was his hand steering the car, and whatever injury occurred, if any, for which anybody was liable, must have been through his agency, and this is sustained by all of the authorities. *Childress v. Lake Erie, etc., R. Co.*, 182 Ind. 251, 105 N.E. 467; *Webster v. Chicago, St. P. M. & O. Ry. Co.*, 119 Minn. 72, 137 N.W. 168; *Rathjen v. Chicago, B. & Q. R. Co.*, 85 Neb. 808, 124 N.W. 473; *Loveman v. Bayless*, 128 Tenn. 307, 160 S.W. 841, Ann. Cas. 1915C, 187; *Emmons v. Southern Pacific Co.*, 97 Or. 263, 298, 191 P. 333.

*DeGraff*, 62 Ariz. at 269–70 (quoting *Dare*, 224 P. at 648).   As in *Dare*, the employee's liability in each case cited in the above quote was adjudicated on the merits by a jury.

¶13    Even though (1) *Union Indemnity Co.* and *Hargis* concluded that a dismissal with prejudice precludes future actions against the dismissed defendants and did not address the impact on claims against other defendants, and (2) *Dare* and the cases it relied on involved the exoneration of an employee *on the merits of a claim*, the *DeGraff* majority relied on these authorities as meaning the dismissal with prejudice in that case was a merits adjudication that adjudicated Mundee "not guilty of any negligence."   *Id.* at 269–70.   Consequently, it held DeGraff could not be adjudicated vicariously liable.   *Id.* at 270.

¶14    The dissenting justice disagreed, faulting the majority's "premise that the dismissal of Mundee amounted to an adjudication that he was not guilty of any negligence."   *Id.* at 270–71 (Morgan, J., dissenting). He cited the dismissal rule then in effect, now codified as Arizona Rule of Civil Procedure 41(a), which permitted a plaintiff to voluntarily dismiss a claim only by court order and with any conditions the court deemed proper.

*Id.* at 271. According to the dissent, the trial judge clearly conditioned the dismissal on permitting the Smiths to proceed against DeGraff and prove Mundee's negligence. *Id.* Otherwise, the judge would have also dismissed the case against DeGraff, and he would not have instructed the jury that DeGraff could only be liable if Mundee acted negligently. *Id* at 271–72.

**¶15** In sum, the *DeGraff* majority concluded that dismissing a claim against an employee with prejudice for any reason serves to exonerate that employee from negligence and thus simultaneously adjudicates a respondeat superior claim against the employer. Notably, this conclusion rested on neither claim preclusion (res judicata) nor issue preclusion (collateral estoppel). Those doctrines apply only after entry of a final judgment on the merits of all claims, and *DeGraff* addressed the effect of a dismissal with prejudice on a respondeat superior claim pending in the same lawsuit. *See Banner Univ. Med. Ctr. Tucson Campus, LLC v. Gordon*, 252 Ariz. 264, 266–67 ¶¶ 10–11 (2022); *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986). Issue preclusion also could not apply because whether Mundee was negligent was not litigated. *See Chaney Bldg. Co.*, 148 Ariz. at 573 ("Collateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment."). Instead, *DeGraff* created a new doctrine, unique to respondeat superior claims.

**B.**

**¶16** If we follow *DeGraff*, we must conclude the superior court correctly entered summary judgment for SRP on Laurence's respondeat superior claim because the court dismissed his claim against Gabrielson with prejudice. *See DeGraff*, 62 Ariz. at 270. Laurence, however, asks that we overrule that case and instead decide that dismissal of a claim against an employee for reasons unrelated to a claim's merits does not foreclose a respondeat superior claim against the employer. SRP urges us to continue to recognize and apply *DeGraff* because courts have done so repeatedly since 1945, the reasons underlying its rationale still exist, and stare decisis militates against overruling it.

7

**1.**

**¶17**     We begin with stare decisis because it provides the framework for deciding the parties' arguments.   The stare decisis doctrine cautions courts against overruling a prior opinion unless the reasons underlying it no longer exist or the opinion was "clearly erroneous or manifestly wrong."   *State v. Agueda*, 253 Ariz. 388, 391–92 ¶ 20 (2022) (quoting *Lowing v. Allstate Ins.*, 176 Ariz. 101, 107 (1993)).   The doctrine is rooted in the public policy that people should be able to rely on judicial precedent to know their rights and order their conduct accordingly.   *See Derendal v. Griffith*, 209 Ariz. 416, 424 ¶ 33 (2005); *see also Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2177 (2019) ("The doctrine of stare decisis reflects a judgment that in most matters it is more important that the applicable rule of law be settled than that it be settled right." (cleaned up) (quoting *Agostini v. Felton*, 521 U.S. 203, 235 (1997))); *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 132 ¶ 17 (2020) ("The doctrine of stare decisis is based upon the value to the rule of consistency, continuity, and predictability."); *Galloway v. Vanderpool*, 205 Ariz. 252, 256 ¶ 16 (2003) (stating stare decisis "seeks to promote reliability so that parties can plan activities knowing what the law is").

**¶18**     We have recognized that stare decisis "should not require [unbending] adherence to authority."   *Derendal*, 209 Ariz. at 424 ¶ 33 (quoting *Goldman v. Kautz*, 111 Ariz. 431, 432 (1975)); *see also State v. Hickman*, 205 Ariz. 192, 200 ¶ 37 (2003) ("Stare decisis is a doctrine of persuasion, not a rigid requirement . . . ." (emphasis omitted)); *White v. Bateman*, 89 Ariz. 110, 113 (1961) (to same effect).   Regardless, any departure from stare decisis "demands special justification." *Hickman*, 205 Ariz. at 200 ¶ 37 (quoting *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984)); *see also Young v. Beck*, 227 Ariz. 1, 6 ¶ 22 (2011) (stating the Court will not overturn prior case law for "mere disagreement" but "will overturn long-standing precedent only for a compelling reason" (quoting *State v. McGill*, 213 Ariz. 147, 159 ¶ 52 (2006))).

**¶19**     The strength with which courts apply stare decisis varies by case type.   Courts most strongly defer to precedent that construed an existing statute because the legislature had the opportunity to change that statute if it disagreed with the judicial interpretation.   *See Brnovich*, 250 Ariz. at 132 ¶ 17; *Hickman*, 205 Ariz. at 201 ¶ 38.   Similarly, stare decisis is "at its zenith" when the precedent established "important settled expectations—especially those relating to property and contract rights."

Bryan A. Garner et al., *The Law of Judicial Precedent* 370 (2016) [hereinafter Garner]. Conversely, courts are less likely to invoke stare decisis to preserve precedent concerning court-created procedural rules. *See Hickman*, 205 Ariz. at 201 ¶ 38; Garner at 370. This is so because people expect court rules "to change with the times" and are unlikely to rely on court procedures in ordering their personal affairs. *See Hickman*, 205 Ariz. at 201 ¶ 38; *see also* Garner at 370 ("After all, procedural rules don't usually dictate the parties' real-world actions or upset their expectations.").

**2.**

¶20        Several compelling reasons persuade us to overrule *DeGraff* and its progeny to the extent these cases conclude that dismissing a claim against an employee for reasons that did not exonerate the employee from wrongdoing requires the court to also dismiss a claim against the employer under the doctrine of respondeat superior.

**(a)**

¶21        First, *DeGraff* is "clearly erroneous or manifestly wrong." *See Agueda*, 253 Ariz. at 391–92 ¶ 20 (quoting *Lowing*, 176 Ariz. at 107). The trial court in *DeGraff* dismissed the Smiths' (plaintiffs) claim against Mundee (employee) pursuant to what is now Rule 41(a), which permitted the court to place conditions on the dismissal. By immediately submitting the respondeat superior claim to the jury, instructing it must find Mundee negligent to enter a verdict against DeGraff (employer), and denying DeGraff's motion for judgment notwithstanding the verdict, the court clearly conditioned Mundee's dismissal on the Smiths' continuing adjudication of their claim against DeGraff. *See DeGraff*, 62 Ariz. at 263; *id.* at 271 (Morgan, J., dissenting).

¶22        More significantly, *DeGraff*'s legal reasoning is both conclusory and faulty—a circumstance our dissenting colleagues do not even attempt to defend. The *DeGraff* majority correctly treated employee Mundee's dismissal "with prejudice" as "an adjudication on the merits" of the claim against Mundee. *See DeGraff*, 62 Ariz. at 269. But it failed to explain why that circumstance meant he had "been adjudged as not guilty of any negligence" so as to preclude pursuit of the separate respondeat superior claim against DeGraff. *See id.* at 270.

**¶23**　　　　The authorities relied on by the *DeGraff* majority did not support its conclusion.　　The C.J.S. section characterized a dismissal "with prejudice" as concluding the rights of parties to the dismissed claim "as though suit had been prosecuted to a final prosecution adverse to the complainant."　*See* 27 C.J.S. *Dismissal and Nonsuit* § 73, at 474 n.89 (1959).[2] It did not address the effect on a separate respondeat superior claim, which involves different parties.　*See id.*　Similarly, *Union Indemnity Co.*, 18 S.W.2d at 330, and *Hargis*, 79 P. at 121, did not involve respondeat superior claims.　　Those cases concluded that an order dismissing a case against a defendant with prejudice constitutes a final disposition of the dispute and bars future action against that defendant (claim preclusion).　*See Union Indemnity Co.*, 18 S.W.2d at 330; *Hargis*, 79 P. at 121.　*Dare* and the cases it cited precluded respondeat superior claims against employers based on dismissals with prejudice of claims against employees.　*See Dare*, 224 P. at 646.　But the dismissals in those cases occurred because the underlying negligence claims against the employees *lacked merit*, making the cases distinguishable from *DeGraff*.　*See id.* at 648.

**¶24**　　　　Contrary to *DeGraff*'s reasoning, dismissing a claim "with prejudice" against an employee for reasons unrelated to the merits of that claim does not preclude adjudication of a separate respondeat superior claim against the employer.　　Although *DeGraff* involved a voluntary dismissal, because the dismissal was "with prejudice" and therefore operated as "an adjudication on the merits," the dismissal's import is grounded in Rule 41(b), which applies to involuntary dismissals. Rule 41(b), which was codified as 21-916, A.C.A. (1939) when *DeGraff* was decided but was not cited by the majority, provides that "[u]nless the dismissal order states otherwise, a dismissal under this Rule 41(b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."　Interpreting the federal version of Rule 41(b), which is identical to Arizona's version, the United States Supreme Court concluded that an "adjudication upon the merits" is simply the opposite of a "dismissal without prejudice" under Rule 41(a).　*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001).　The Court noted that the

---

[2] The C.J.S. version cited by the *DeGraff* majority is no longer accessible. *See DeGraff*, 62 Ariz. at 268.　Because the 1959 version reflects that *DeGraff* cited the same provision and footnote, it follows that the substance of this provision had not changed since *DeGraff*.　*See* 27 C.J.S. *Dismissal and Nonsuit* § 73, at 474 n.89 (1959).

term "with prejudice" is shorthand for "an adjudication upon the merits." *Id.* (quoting 9 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 2373, at 396 n.4 (1981)). Because a dismissal "without prejudice" permits the plaintiff to refile the same claim, the Court concluded that a dismissal "with prejudice" merely "bar[s] refiling of the same claim in the [same court]." *Id.* at 506; *see also Magellan Health, Inc. v. Duncan ex rel. Maricopa*, 252 Ariz. 400, 403 ¶ 11, 404 ¶ 14 (App. 2021) (citing *Semtek* to conclude that the district court's dismissal of a claim "with prejudice" for lack of standing and jurisdiction did not preclude plaintiff's state-court action based on the same claims).

**¶25** Following our general inclination to interpret Arizona's procedural rules consistently with their federal counterparts, *Flynn v. Campbell*, 243 Ariz. 76, 80 ¶ 9 (2017), we agree with *Semtek* that a dismissal "with prejudice" does no more than bar refiling the same claim in the same court. Both the C.J.S. provision cited by *DeGraff* and our cases before *DeGraff* align with this view. *See* 27 C.J.S. *Dismissal and Nonsuit* § 73, at 474 n.89 (1959) ("[A] dismissal with prejudice has a well-recognized legal import; it is converse of [the] term 'without prejudice.'"); *Tootle-Campbell Dry Goods Co. v. Knott*, 43 Ariz. 210, 213 (1934) (concluding that a dismissal with prejudice of a case against defendants in their individual capacity barred a future suit on that theory but did not bar suit against them in their representative capacity); *Berman v. Thomas*, 41 Ariz. 457, 464 (1933) (acknowledging that a dismissal "with prejudice" served "as a bar to another action between the same parties over the same subject-matter"); *Roden v. Roden*, 29 Ariz. 549, 553 (1926) ("A judgment of dismissal 'with prejudice' is the same as a judgment for defendant upon the merits, and, of course, is res judicata as to every matter litigated." (citation omitted)).

**¶26** Contrary to SRP's argument, with which our dissenting colleagues agree, *see infra* ¶¶ 60–61, following *Semtek*'s interpretation of Rule 41(b) is not inconsistent with this Court's decision in *Anguiano v. Transcontinental Bus System, Inc.*, 76 Ariz. 246 (1953). In *Anguiano*, the superior court dismissed a personal injury lawsuit because the plaintiff had failed to comply with an order requiring him to post security for costs. *Id.* at 246. The plaintiff filed a new but identical lawsuit, and the court entered summary judgment because dismissal of the first lawsuit operated as an adjudication on the merits under Rule 41(b). *Id.* at 246–47.

¶27 This Court affirmed, rejecting the plaintiff's argument that Rule 41(b) applies only to involuntary dismissals based on a claim's merits. *Id.* at 247. The Court reasoned in part that examining the reasons for involuntarily dismissing a case to determine Rule 41(b)'s application would "conjure up a hydra-headed monster in the field of procedure." *Id.* at 250. *Anguiano* is consistent with our view that a dismissal "with prejudice" merely bars refiling the same claim in the same court, no matter the basis for the dismissal. *See Semtek*, 531 U.S. at 506; *Magellan Health, Inc.*, 252 Ariz. at 403 ¶ 11, 404 ¶ 14. It did not expand the dismissal's impact to bar a separate claim against another party. Consequently, our decision today does not conjure up *Anguiano*'s mythological monster because, like that Court, we do not examine the reasons for a dismissal with prejudice to bar refiling the same claim in the same court.

¶28 The dissent also incorrectly argues we should assign a different meaning to our version of Rule 41(b) because *Semtek*'s interpretation did not involve respondeat superior and was "informed by uniquely federal concerns." *See infra* ¶ 62. But nothing in Rule 41(b)'s language suggests its meaning changes depending on the type of claim at issue. And although the Supreme Court discussed the ramifications of a contrary interpretation on the relationship between federal and state courts, its interpretive analysis did not turn on any uniquely federal concern. *See Semtek*, 531 U.S. at 505. Instead, the Court viewed Rule 41(b) in juxtaposition to Rule 41(a) and relied on a California Supreme Court decision and secondary authorities in reaching its conclusion. *See id.*

¶29 For these reasons, *DeGraff* was clearly wrong in concluding that dismissing a tort claim against an employee with prejudice for reasons unrelated to the merits and that did not exonerate the employee from wrongdoing required the court to dismiss the respondeat superior claim against the employer.

**(b)**

¶30 Second, this Court has already abrogated *DeGraff* in part for reasons severely undercutting the efficacy of the remainder. Plaintiffs in *Kopp v. Physician Group of Arizona, Inc.*, 244 Ariz. 439 (2018), filed medical malpractice claims against an agent-doctor and a principal-hospital. *Id.* at 440 ¶ 2. Plaintiffs settled with the doctor, resulting in a dismissal with prejudice of claims against him and Plaintiffs' agreement not to pursue claims against the hospital based on a theory of respondeat superior or vicarious liability. *Id.* ¶ 3. Plaintiffs' independent claims against the

hospital for negligent credentialing, hiring, and supervision were unaffected by the settlement. *See id.* at 442 ¶ 12.

**¶31** To prevail on their remaining claims against the hospital, Plaintiffs were required to prove the doctor was negligent. *See id.* ¶ 13. The issue before this Court was whether issue preclusion applied to prevent Plaintiffs from doing so in light of *DeGraff*'s pronouncement that "[a] dismissal with prejudice is an adjudication on the merits." *Id.* (alteration in original) (quoting *DeGraff*, 62 Ariz. at 269). Ultimately, we concluded that applying *DeGraff* to preclude Plaintiffs from proving the doctor's negligence would conflict with our jurisprudence applying issue preclusion only when an issue "was actually litigated," which did not occur there or in *DeGraff*. *Id.* at 442–43 ¶ 15. We noted that our decision in *Chaney Building Co.* abrogated *DeGraff* and its progeny "to the extent those cases suggest that a stipulated dismissal with prejudice is a judgment on the merits for purposes of issue preclusion." *Id.* at 442 ¶ 14. Thus, we "disavow[ed] our holding in *DeGraff* insofar as that case and its progeny conclude that a stipulated dismissal with prejudice operates as an adjudication that the dismissed party was not negligent in the treatment of the plaintiff." *Id.* at 440 ¶ 1 (cleaned up).

**¶32** Our dissenting colleagues nevertheless view *Kopp* as implicitly endorsing what remained of *DeGraff* because *Kopp* acknowledged that "a judgment can be 'on the merits' for purposes of *claim* preclusion even if it results from the parties' stipulation or certain pre-trial rulings by the court." *See id.* at 442 ¶ 14 (quoting *4501 Northpoint LP v. Maricopa Cnty.*, 212 Ariz. 98, 102 ¶ 26 (2006)); *infra* ¶ 64. But this acknowledgment, with which we agree, merely states that a dismissal with prejudice, for any reason, precludes refiling a subsequent lawsuit asserting the same claim against the same party in the same court. *See Chaney Bldg. Co.*, 148 Ariz. at 573. That was not the circumstance in *DeGraff* and is not the situation here. And nothing in *Kopp* endorses *DeGraff*'s conclusion that a dismissal with prejudice of an employee-claim for reasons different from the claim's merits exonerates the employee from wrongdoing and therefore requires dismissal of a respondeat superior claim.

**¶33** Continuing to apply *DeGraff* to respondeat superior claims while carving out a different meaning for issue preclusion purposes would be confusing and unnecessary. Specifically, an "adjudication on the merits" would mean a tort *claim* was actually adjudicated to exonerate an employee from wrongdoing for purposes of vicarious liability (the *DeGraff*

13

circumstance) but the seminal *issue* underlying that tort claim—whether the employee engaged in wrongdoing—was not for purposes of issue preclusion (the *Kopp* circumstance).   Overruling *DeGraff* in substantial part avoids that peculiarity.

**(c)**

**¶34**　　　　　Third, *DeGraff* conflicts with our cases and an Arizona statute recognizing that under the doctrine of respondeat superior, an employer is vicariously liable for its employee's *tortious acts*, not the employee's *adjudicated liability*.   *See Kopp*, 244 Ariz. at 441 ¶ 9 ("Under the doctrine of respondeat superior, an employer is vicariously liable for 'the negligent work-related actions of its employees.'" (quoting *Engler v. Gulf Eng'g, Inc.*, 230 Ariz. 55, 57 ¶ 9 (2012))); *Tarron v. Bowen Mach. & Fabricating, Inc.*, 225 Ariz. 147, 150 ¶ 9 (2010) (same); A.R.S. § 12-2506(D)(2) ("[A] party is responsible for the fault of another person . . . if . . . [t]he other person was acting as an agent or servant of the party."); § 12-2506(F)(2) (defining "fault" as "an actionable breach of legal duty, act or omission" that causes injury or damages); *see also Fields v. Synthetic Ropes, Inc.*, 215 A.2d. 427, 432–33 (Del. 1965) (recognizing that "the imputation of negligence rests squarely upon, and is justified by, the culpability of the employee, not upon the circumstance of whether or not the employee may, himself, be held liable for his act"); Restatement (Second) of Agency § 219(1) (Am. L. Inst. 1958) ("A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.").

**¶35**　　　　　Indeed, a plaintiff is not required to sue the employee to pursue a respondeat superior claim against the employer.   *See Wiggs v. City of Phx.*, 198 Ariz. 367, 371 ¶¶ 14–16 (2000); *see also* § 12-821.01(A) (recognizing that claims against public employers and their employees are distinct by requiring service of separate notices of claim on each).   And this Court has held that a plaintiff could pursue a respondeat superior claim against a principal even after a claim against its agent was dismissed without prejudice, but the applicable statute of limitations precluded refiling the claim.   *See Hovatter v. Shell Oil Co.*, 111 Ariz. 325, 326 (1974).

**¶36**　　　　　By requiring dismissal of a respondeat superior claim when the employee-claim is dismissed for reasons unrelated to the claim's merits, *DeGraff* incorrectly hitches the respondeat superior doctrine to the employee's liability rather than the employee's tortious acts.   Overruling *DeGraff* in substantial part eliminates this misstep.

¶37    The dissent asserts that two Restatement provisions undermine our conclusion that *DeGraff* conflicts with our respondeat superior jurisprudence.  *See infra* ¶ 65.  Not so.  Restatement (Second) of Agency § 217B cmt. c, cited in *Kopp*, 244 Ariz. at 441 ¶ 9, provides that "in an action against two persons, judgment [cannot] properly be rendered against one and for the other, if the liability of the one [cannot] exist without the liability of the other."  Viewed in context, this comment does not suggest that a judgment must be entered against an agent-employee individually before the principal-employer can be found vicariously liable, as the dissent suggests.  This comment supplements § 217B(2), which forbids "judgments *on the merits* for the agent and against the principal," a rule with which we agree.  *DeGraff*'s conflict arises from its treatment of a judgment for the agent *not* on the merits, making the comment inapplicable.

¶38    Restatement (Third) of Torts: Apportionment of Liability § 13 cmt. e (Am. L. Inst. 2000), which has never been adopted or even cited by an Arizona court, likewise does not affect our analysis.  That comment observes that "[t]he vicariously liable party is liable only for the share of plaintiff's damages for which the tortious actor is held liable pursuant to this Section."  Section 13 provides that the vicariously liable defendant can only be "liable for the entire share of comparative responsibility assigned to [the agent-employee]."  Nothing in § 13 or the comment suggests that an agent-employee is only "held liable" if named as a defendant and adjudicated personally liable.  Indeed, comment c recognizes that the basis for a vicariously liable party's liability is "legal imputation of *responsibility for another's tortious acts*," not responsibility for a judgment against the agent personally.  And any different view of § 13 comment e would conflict with this Court's view that an agent-employee does not have to be sued or even capable of being sued for a plaintiff to pursue a respondeat superior claim.  *See Wiggs*, 198 Ariz. at 371 ¶¶ 14–16; *Hovatter*, 111 Ariz. at 326.

**(d)**

¶39    Fourth, *DeGraff* is in tension with our courts' recognition that employers sued under respondeat superior cannot assert defenses personal to their employees.  *See Brumbaugh v. Pet Inc.*, 129 Ariz. 12, 13 (App. 1981) (adopting Restatement (Second) of Agency § 217(B) to conclude that an employer cannot avoid vicarious liability for its employee's tortious actions merely because the employee has interspousal-immunity from liability); *see also Clem v. Pinal Cnty.*, 251 Ariz. 349, 354–55 (App. 2021) (adopting Restatement (Second) of Judgments § 51(1)(b) to bar application of claim

preclusion in favor of a principal sued under respondeat superior when the earlier judgment in favor of the agent was based on a defense personal to that agent). In other words, and contrary to SRP and the dissent's position, a respondeat superior claim is freestanding, and an employee and employer therefore do not always occupy the "same shoes." *See infra* ¶ 67. When a plaintiff violates an employee's procedural rights it raises a defense personal to the employee. Applying *DeGraff* to dismiss a respondeat superior claim because the court dismissed an employee-claim for procedural reasons—as occurred here because Laurence did not timely comply with § 12-821.01—would effectively permit the employer to assert a defense personal to the employee. Overruling *DeGraff* in substantial part prevents this conflicting result.

**(e)**

**¶40** Fifth, public policy does not support upholding *DeGraff*. Whether to dismiss a vicarious liability claim after dismissal of an employee-claim with prejudice is a matter of court procedure. *See State v. Reed*, 248 Ariz. 72, 76 ¶ 13 (2020) (describing procedural law as pertaining to and prescribing "the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective" (quoting *State v. Birmingham*, 96 Ariz. 109, 110 (1964))). We recognize that several cases have favorably cited *DeGraff* when employee-claims were dismissed for reasons unrelated to the claims' merits. *See, e.g.*, *Law v. Verde Valley Med. Ctr.*, 217 Ariz. 92, 96 ¶ 12 (App. 2007); *Torres v. Kennecott Copper Corp.*, 15 Ariz. App. 272, 274 (1971), *abrogated in part as described in Kopp*, 244 Ariz. at 442 ¶ 14. But because persons and entities do not rely on procedural rules to know their substantive rights and order their affairs accordingly, overruling *DeGraff* and its progeny will not disrupt any ongoing or future private or governmental affairs. Thus, we are inclined to take that path rather than continuing to rigidly follow a deeply flawed case. *See Derendal*, 209 Ariz. at 424 ¶ 33; *Hickman*, 205 Ariz. at 201 ¶ 38; Garner at 370.

**¶41** SRP argues that *DeGraff* "advances fundamental principles of fairness" because it would be unfair to permit a respondeat superior claim against the employer when the employee who committed the tort is relieved of liability. We are unconvinced that this result would be unjust when the employee-claim is dismissed for reasons unrelated to the claim's merits. As previously explained, the doctrine of respondeat superior imputes the employee's tortious acts to the employer, not the employee's liability. Thus, unless and until the court or a jury finds that the employee did not commit a tort, or possibly that the plaintiff released the employee

from liability, which did not occur in *DeGraff* or here,[3] it is fair to permit the respondeat superior claim to continue. *See Wiper v. Downtown Dev. Corp. of Tucson*, 152 Ariz. 309, 311 (1987) (stating it would be unjust to exonerate an employee from paying punitive damages while imposing punitive damages on the employer under respondeat superior).

¶42        We are also unpersuaded by SRP's two-pronged argument that *DeGraff* "is necessary to meaningfully vindicate agent-defendants' violated rights."   SRP initially asserts that unless the respondeat superior claim is dismissed when the employee-claim is dismissed for procedural reasons, plaintiffs would not be deterred from violating an employee's procedural rights.   The consequence of dismissal itself, however, deters plaintiffs from violating procedural rights.   SRP then contends that dismissing an employee-claim would be meaningless if an employer could be found vicariously liable and then seek indemnity from the employee. But this could happen if the employee was never a party to the lawsuit that resulted in the vicarious liability judgment.   *See Wiggs*, 198 Ariz. at 371 ¶¶ 14–16 (explaining both that the agent does not have to be sued to impose vicarious liability on the principal and that the principal can sue the agent for indemnity).   SRP does not suggest why an employee should be relieved from indemnifying the employer for a vicarious-liability judgment stemming solely from the employee's tortious acts simply because the injured plaintiff could not pursue a claim against the employee for procedural reasons.   The employee's procedural rights are sufficiently vindicated by dismissal of the employee-claim.

**(f)**

¶43        For these reasons, we overrule *DeGraff* and its progeny to the extent these cases suggest that dismissing a claim with prejudice against an employee for reasons unrelated to the merits of that claim requires the court to also dismiss a respondeat superior claim against the employer. Although courts in other jurisdictions are split on this issue, for the reasons explained, we agree with the courts that decided that when tort claims against an employee are not actually adjudicated, dismissal of the employee-claim does not summarily require dismissal of the respondeat

---

[3] When a plaintiff executes a covenant not to sue an employee-agent, the employer-principal is not released from liability.   *See Hovatter*, 111 Ariz. at 327.   But we have not yet addressed whether a release of the employee-agent releases the employer-principal, and we need not do so here.

superior claim. *See, e.g.*, *Cameron v. Osler*, 930 N.W.2d 661, 664–67 ¶¶ 7–18 (S.D. 2019) (collecting cases).

**¶44** To be clear, to the extent *DeGraff* states that exonerating or acquitting an employee of tortious acts must exonerate or acquit the employer from vicarious liability, we agree. Dismissing a tort claim against an employee because the claim lacks merit requires the court to also dismiss a claim against an employer under the doctrine of respondeat superior. *See Hovatter*, 111 Ariz. at 327 ("Where the master's liability rests solely on respondeat superior, if the servant is exonerated by trial on the merits, then, of course, the master cannot be held liable . . . ." (quoting *Holcomb v. Flaving*, 210 N.E.2d 565, 567 (Ill. App. (1965))); *Kennecott Copper Corp. v. McDowell*, 100 Ariz. 276, 281–82 (1966) (recognizing that a directed verdict in favor of an agent who purportedly committed a tort "necessarily releases the principal"); Restatement (Second) of Torts § 883 (Am. L. Inst. 1979) ("If two defendants are joined in an action for the same harm, judgment can properly be entered against one and in favor of the other, except when the judgment is entered after trial on the merits and the liability of one cannot exist without the liability of the other.").

**¶45** Requiring courts to determine whether a dismissal of a claim against an employee was on the merits, thereby exonerating that employee from wrongdoing and, in turn, precluding a respondeat superior claim, does not conjure up a "monster," as the dissent imagines. *See infra* ¶¶ 68–69. This is not an onerous task. As in this case, claims against employees and employers are frequently brought simultaneously, and the judge knows precisely why the employee-claim was dismissed. In successive lawsuits, a judge can examine both the reasons given by the moving party for dismissing the employee-claim in the prior case and any reasoning provided in the court's dismissal order. Judges routinely examine prior judgments to identify their underlying bases. For example, they do so to decide whether an issue was actually litigated for purposes of issue preclusion. *See In re Gen. Adjudication of All Rts. to Use Water in Gila River Sys. & Source*, 212 Ariz. 64, 70 ¶ 14 n.8 (2006) (stating that issue preclusion "attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment" and noting that in "a judgment entered by confession, consent, or default, none of the issues is actually litigated" (quoting *Arizona v. California*, 530 U.S. 392, 414 (2000))). We are confident judges are up to the task.

¶46 We do not overrule *DeGraff* lightly, as the dissent suggests with notable bluster. *See infra* ¶ 56. Nor are we dispensing with a case that has flawlessly guided courts for nearly eighty years, as our colleagues also imply. *See id.* *DeGraff* was incorrectly decided from the outset, forcing courts to wrestle with its illogic for decades and prompting this Court to chip away parts. *See Kopp*, 244 Ariz. at 440 ¶ 1; *Chaney Building Co.*, 148 Ariz. at 573.

¶47 *DeGraff* has also injected confusion into our jurisprudence. In *Cochise Hotels, Inc. v. Douglas Hotel Operating Co.*, 83 Ariz. 40 (1957), for example, this Court cited *DeGraff* for the principle that a dismissal with prejudice is a "final determination" that "has the same effect as an adjudication on the merits of the case." *Id.* at 47–48. But in the same paragraph, the Court stated that a dismissal "with prejudice" is not a "final determination" if based "upon some ground *which does not go to the merits*," a conclusion squarely at odds with *DeGraff*. *Id.* (emphasis added); *see also Knick*, 139 S. Ct. at 2178 (stating that a prior case's "consistency with other related decisions" is a factor in deciding whether to overrule that case (citation omitted)).

¶48 Also, federal courts considering the same issue as the one here have applied Arizona law to arrive at decisions both at odds with *DeGraff* and consistent with it. *Compare Crick v. City of Globe*, 606 F. Supp. 3d 912, 918–19 (D. Ariz. 2022) ("Although a dismissal due to a failure to comply with the notice of claim statute is a dismissal 'with prejudice,' dismissal on this ground is not an adjudication on the merits."), *and Strickler v. Arpaio*, No. CV-12-00344-PHX-GMS, 2012 WL 6200612, at *3 (D. Ariz. Dec. 12, 2012) (stating that a dismissal based on the notice of claim statute "is not a determination on the merits for purposes of respondeat superior"), *with Ferreira v. Arpaio*, No. CV-15-01845-PHX-JAT, 2016 WL 3970224, at *10 (D. Ariz. July 25, 2016) (reaching the opposite conclusion).

¶49 After carefully applying stare decisis, we eliminate all confusion by shaking free of *DeGraff*'s incorrect reasoning.

## C.

¶50 Turning to this case, we conclude the superior court incorrectly entered summary judgment in favor of SRP. The court dismissed the claim with prejudice against Gabrielson solely because Laurence had failed to timely comply with § 12-821.01(A), which is

analogous to a statute of limitations.  *See Pritchard v. State*, 163 Ariz. 427, 430–31 (1990) (addressing the predecessor to § 12-821.01(A)).  It did not exonerate Gabrielson from the claim that he had negligently operated the SRP truck.  Thus, Laurence's claim that SRP is vicariously liable to him remains viable.

## CONCLUSION

**¶51**        We vacate the court of appeals' decision, reverse the partial summary judgment entered in favor of SRP and against Laurence, and remand to the superior court for further proceedings.

MONTGOMERY, J., Concurring:

**¶52** I write separately to note that this is a case of first impression for this Court regarding the application of *DeGraff v. Smith*, 62 Ariz. 261 (1945), in the context of a public employer and a public employee and to highlight the effect of *DeGraff*'s holding.

**¶53** What SRP seeks to do in dismissing the plaintiff's claim is to essentially use the notice of claim requirement under A.R.S. § 12-821.01 as both a sword and shield. A sword to deny Laurence the ability to bring his claim and a shield against liability for one of its employees. SRP is not unjustified in this effort because a public employer's liability is governed by Arizona law, which includes our statutes and the holding of *DeGraff*. *See* 1984 Ariz. Sess. Laws ch. 285, § 1 (2d Reg. Sess.) (providing that "it is hereby declared to be the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state"). Yet, the plaintiff in this case properly served the public employer and § 12-821.01 does not require a plaintiff to serve a notice of claim on an employee in order to file a claim against a public employer. Additionally, there has been no determination on the merits regarding the employee's liability.

**¶54** The upshot of *DeGraff* then is that it results in a de facto requirement that a plaintiff must properly serve a public employee in order to maintain a claim against a public employer under circumstances as we have in this case. Yet, that is not required by the plain text of § 12-821.01. *See James v. City of Peoria*, 253 Ariz. 301, 305 ¶ 21 (2022) ("We will not construe the notice of claim statute, under which the claimant satisfies the relevant requirements but adds a condition of no legal consequence, in a way that defeats the clear text of the statute.").

**¶55** Therefore, for this additional reason, I concur fully in my colleagues' analysis and conclusion regarding the need to overturn *DeGraff*, as well as the interpretation of Rule 41(b).

LOPEZ, J., joined by BEENE, J. and KING, J. Dissenting:

¶56        The majority dispenses with stare decisis to upend nearly eighty years of respondeat superior jurisprudence—and potentially unsettle the law on Arizona Rule of Civil Procedure 41 and claim preclusion—on the ground that *DeGraff v. Smith,* 62 Ariz. 261 (1945), is clearly erroneous or manifestly wrong.   The majority embarks upon this precarious road despite the debatable nature of the issue—a reason upon which we recently declined to overrule precedent interpreting a constitutional provision in *Arizona Free Enterprise Club v. Hobbs*, 253 Ariz. 478, 484 ¶ 17 (2022).   The *DeGraff* dissent does not undercut the case's legal reasoning and the majority here (1) erroneously relies on an interpretation and application of Rule 41's ambiguous text by importing federal courts' interpretation of the corresponding federal rule, which is based, in part, on uniquely federal concerns, and is contrary to eighty years of Arizona jurisprudence; (2) overstates *DeGraff*'s conflict with our jurisprudence; and (3) creates more confusion in the procedural realm than it purports to clarify.   For these reasons, we respectfully dissent.

## I.

¶57        "Generally, the doctrine of stare decisis cautions us against overruling former decisions."   *State v. Agueda*, 253 Ariz. 388, 391 ¶ 20 (2022) (quoting *E.H. v. Slayton*, 249 Ariz. 248, 254 ¶ 13 (2020)).   "[S]tare decisis commands that 'precedents of the court should not lightly be overruled,' and mere disagreement with those who preceded us is not enough."   *Young v. Beck*, 227 Ariz. 1, 6 ¶ 22 (2011) (quoting *State v. Salazar*, 173 Ariz. 399, 416 (1992)).   We must have a compelling reason to overturn long-standing precedent.   *Id.*   The majority asserts that *DeGraff* is clearly erroneous or manifestly wrong.   *Supra* ¶ 21.   We disagree.

¶58        The majority concedes that "courts in other jurisdictions are split on [the issue before us]," *supra* ¶ 43, and that Arizona courts have "favorably cited *DeGraff* when employee-claims were dismissed for reasons unrelated to the claims' merits," *supra* ¶¶ 40, 48.   Although a split in other jurisdictions on an issue and adherence by our own courts do not necessarily foreclose a conclusion that a case is clearly erroneous or manifestly wrong, it strongly suggests that the issue is debatable and militates against overturning precedent.   In fact, we have recently employed precisely this reticence in electing to follow stare decisis.   *See*

*Hobbs*, 253 Ariz. at 484 ¶ 17 (following stare decisis in concluding that *Garvey* is not clearly erroneous because it was "debatable whether *Warner* or *Garvey* offer[ed] the best interpretation" of a constitutional provision). This principle is particularly applicable where, as here, the majority's decision to override stare decisis relies on mere "agreement" with other jurisdictions' conclusions contrary to our jurisprudence, *supra* ¶ 43, rather than the absence of any supporting legal authority or reasoning. *See Young*, 227 Ariz. at 6.

## II.

¶59 The presence of a dissent in *DeGraff* does not undermine its legal reasoning. The *DeGraff* dissent implicitly adopted the majority's premise that even a voluntary dismissal with prejudice against the employee forecloses a respondeat superior claim against the employer. *DeGraff*, 62 Ariz. at 271 (Morgan, J., dissenting). The *DeGraff* dissent instead contended that the majority erroneously affirmed the trial court's dismissal of the action against the employee with prejudice—with its attendant legal consequence for the respondeat superior claim—because the dismissal with prejudice was inconsistent with the plaintiff and trial court's intent to enter a conditional dismissal that permitted the case to proceed against the employer. *Id.* at 270–71 ("I cannot agree with the majority members of the court. Their decision is based on the premise that the dismissal of [the employee] amounted to an adjudication that he was not guilty of any negligence. A reading of the record discloses that the dismissal was conditional. There appears to have been no intent upon the part of the attorneys for the plaintiff to dismiss with prejudice."). In fact, the dissent merely urged the majority "to limit the effect of the dismissal in accordance with the intention of the plaintiff and the court." *Id.* at 272. Thus, the *DeGraff* dissent's criticism of the majority's opinion centered on its interpretation of the record rather than on its legal reasoning concerning the preclusive effect of the precursor to Rule 41(a) on the respondeat superior claim. Consequently, it offers no support for the majority's assertion here that *DeGraff* was clearly erroneous or manifestly wrong.

## III.

¶60 The majority relies on our oft-repeated "general inclination to interpret Arizona's procedural rules consistently with their federal counterparts" to justify following the interpretation of Federal Rule of Civil Procedure 41 as set forth in *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001). *Supra* ¶ 25. The majority, citing *Semtek*, contends

that "adjudication on the merits" is "simply the opposite of a 'dismissal without prejudice' under Rule 41(a)" and, thus, "the term 'with prejudice' is shorthand for 'an adjudication upon the merits.'" *Supra* ¶ 24. This interpretation, although reasonable, is not unassailable because it is incomplete. To confine the meaning of "adjudication upon the merits" to "with prejudice" artificially limits its scope and ignores the rule's inherent distinction embodied in its use of the two phrases. *Compare* Rule 41(a) (stating that voluntary dismissals, unless the notice or order states otherwise, are "without prejudice"), *with* Rule 41(b) (stating that "[u]nless the dismissal states otherwise, a dismissal under Rule 41(b) and any dismissal not under this rule," except for three specified exceptions, "operates as an adjudication on the merits").

¶61 Rule 41(b)'s text certainly signals a preclusive purpose, but it is arguably ambiguous because it is silent on the scope of the preclusive effect of "an adjudication on the merits" ruling. This ambiguity invites and supports different interpretations of the phrase's meaning and, thus, does not foreclose a broader preclusive effect consistent with *DeGraff*. We should adhere to our own long-standing interpretation of the rule. *See Anguiano v. Transcon. Bus Sys.*, 76 Ariz. 246, 250 (1953) ("Rule 41(b) used plain, clear, simple, unequivocal language, and says an involuntary dismissal other than for lack of jurisdiction or for improper venue operates as an adjudication upon the merits unless the court otherwise directs.").

¶62 Putting aside the interpretative merits of *Semtek*, more compelling reasons militate against the majority's reliance on *Semtek* to guide interpretation of our Rule 41. First, *Semtek* did not involve the claim preclusive effect of a Rule 41(b) dismissal in the respondeat superior context; instead, *Semtek* examined a complex diversity jurisdiction issue concerning whether a federal court's dismissal of a plaintiff's claim on state-statute-of-limitations grounds precluded the plaintiff's suit in another state. 531 U.S. at 499–500. It offers little insight into the question before us—one purely of state law and concern involving respondeat superior in the context of a state tort claim arising from a vehicle accident. Second, *Semtek*'s interpretation of the federal rule was informed by uniquely federal concerns, absent here, such as "the jurisdictional limitation of the Rules Enabling Act" and federalism principles. *Id.* at 503–04; *see also id.* at 503 ("[I]t would be peculiar to find a rule governing the effect that must be accorded federal judgments by other [state] courts ensconced in rules governing the internal procedures of the rendering court . . . ."). Plainly,

the *effect* of the rule rather than its text compelled *Semtek*'s interpretation of the federal rule. *Id.*

¶63    We dispense with the "general inclination to interpret Arizona's procedural rules consistently with their federal counterparts," *supra* ¶ 25, if the federal interpretation is in tension with Arizona policy, practice, or case law. *Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, 464 (1990) ("[B]lind devotion to federal interpretation is not required; we need not follow the federal cases if we believe Arizona policy, practice, or case law requires a different result."); *see also Orme School v. Reeves*, 166 Ariz. 301, 304 (1990). This is precisely the circumstance here. Conformity with the federal rule does not merely generate tension with our policy, practice, and case law, it requires discarding nearly eighty years of jurisprudence concerning state procedural rules involving state tort claims. We should, as we have done before, reject the federal interpretation of its analog rule as wholly inconsistent with our law. *See, e.g.*, *State v. Ariz. Bd. of Regents*, 253 Ariz. 6, 14 ¶¶ 33–34 (2022) ("Although we recognize the persuasive value of federal courts' interpretation of a federal procedural rule, it is 'not binding in the construction of our rule.'" (quoting *Flynn v. Campbell*, 243 Ariz. 76, 80 ¶ 9 (2017))); *Ritchie,* 165 Ariz. at 467 (rejecting the U.S. Supreme Court's interpretation of the federal analog of Arizona Rule of Procedure 15(c), in part, because "[i]t conflict[ed] with established Arizona law").

**IV.**

¶64    The majority's opinion also overstates *DeGraff*'s conflict with our law. First, the assertion that this Court's partial abrogation of *DeGraff* "severely [undercuts] the efficacy of the remainder" is incorrect. *See supra* ¶ 30. In *Kopp v. Physician Group of Arizona, Inc.*, 244 Ariz. 439 (2018), we merely abrogated *DeGraff* and its progeny "to the extent those cases suggest that a stipulated dismissal with prejudice is a judgment on the merits for purposes of issue preclusion." *Id.* at 442 ¶ 14. Although *DeGraff*'s continued vitality was not squarely before us, we expressly acknowledged that "a judgment can be 'on the merits' for purposes of *claim* preclusion even if it results from the parties' stipulation or certain pre-trial rulings by the court." *Id.* (quoting *Northpoint LP v. Maricopa County*, 212 Ariz. 98, 102 (2006)). Contrary to the majority's assertion, *Kopp* endorsed *DeGraff*, albeit implicitly, rather than undercut it. *Id.*

¶65    Second, the majority, citing *Kopp*, also claims that *DeGraff* conflicts with our cases recognizing that "under the doctrine of respondeat

superior, an employer is vicariously liable for its employee's *tortious acts*, not the employee's *adjudicated liability*." *Supra* ¶ 34. The majority overstates this purported conflict. For example, in *Kopp* we cited the Restatement (Second) of Agency § 217B cmt. c (Am. Law Inst. 1958), for the proposition that "the liability of the [principal] cannot exist without the liability of the [agent]." 244 Ariz. at 441 ¶ 9; *see also* Restatement (Third) of Torts: Apportionment of Liability § 13 cmt. e (Am. Law Inst. 2000) ("The vicariously liable party is liable only for the share of plaintiff's damages for which the tortious actor is held liable . . . ."). Of course, imputation of liability requires imputation of tortious acts, but the extent of *DeGraff*'s conflict with our cases on this point is debatable. *See, e.g., Dominguez v. City of Scottsdale,* 587 F. Supp. 3d 914, 937 (D. Ariz. 2022) ("Put simply, because the agent has been adjudicated not liable, as a matter of law, the principal is not [vicariously] liable." (alteration in original) (quoting *Jamerson v. Quintero*, 233 Ariz. 389, 392 ¶ 14 (App. 2013))); *see also Howard v. Wash. Elementary Sch. Dist. 6*, No. 1 CA-CV 20-0390, 2022 WL 363766, at *4 ¶ 16 (Ariz. App. Feb 8, 2022) (mem. decision) (upholding dismissal of vicarious liability claim against public employer based on dismissal of claim against employee for failure to timely serve notice of claim); *Angulo v. City of Phoenix*, No. 1 CA-CV 12-0603, 2013 WL 3828778, at *2 ¶¶ 7–8 (Ariz. App. July 16, 2013) (mem. decision) (same). The majority's contention that Restatement (Second) of Agency § 217B cmt. c "does not suggest that a judgment must be entered against an agent-employee individually before the principal-employer can be found vicariously liable" because it supplements Restatement § 217B(2), which forbids "judgments on the merits for the agent and against the principal," *supra* ¶ 37, merely begs the question before us—what is an "adjudication on the merits?"

## V.

¶66 The majority asserts that *DeGraff* generates a "peculiarity" because "'an adjudication on the merits' would mean a tort *claim* was actually adjudicated to exonerate an employee from wrongdoing for purposes of vicarious liability (the *DeGraff* circumstance) but the seminal *issue* underlying that tort claim—whether the employee engaged in wrongdoing—was not for purposes of issue preclusion (the *Kopp* circumstance)," and purports to end confusion concerning the preclusive effect of judgments involving respondeat superior and issue preclusion. *Supra* ¶ 33. This premise reflects a fundamental misunderstanding of how *DeGraff* and issue preclusion relate. This preclusive distinction is not a peculiarity, but rather a reflection of the principal difference between

derivative or vicarious claims and independent ones. *See Kopp*, 244 Ariz. at 442 ¶ 14. The majority's reasoning, typified by its claim that we have "chip[ped] away parts" of *DeGraff*, *supra* ¶ 46, seems to question the very distinction between respondeat superior (and claim preclusion) and issue preclusion. What the majority characterizes as "chipping away" at *DeGraff* was simply clarification of the circumstances in which it applied. Errors arose not from *DeGraff* but rather from the courts that misapplied it. The majority further injects uncertainty as it raises the question whether it concludes that *Kopp* also was wrongly decided.

¶67 Although respondeat superior is independent from Rule 41(b) and common law claim preclusion, *DeGraff* is not an island. It shares an inherent logic and reasoning with this rule and doctrine. As SRP explains: "The law follows a simple logic: vicarious liability claims put employers in their employees' shoes to vicariously bear the employees' liability; when the employees' liability is extinguished (i.e., dismissed with prejudice for any reason), there no longer exists any liability for the employer to vicariously bear." Thus, a plaintiff cannot establish a prima facie respondeat superior claim because a vicarious action against an employer for its dismissed employee's negligent conduct is, in effect, the same claim. *See* Restatement (Third) of Torts: Apportionment of Liability § 7 cmt. j (Am. Law Inst. 2000) ("When a party is liable solely on the basis of another person's tortious conduct, there is no direct responsibility to assign to the party to whom liability is imputed. In that situation, the party who committed the tortious acts or omissions and the party to whom liability is imputed are treated as a single unit for the assignment of responsibility. For example, an employer who is vicariously liable for the negligence of an employee and the employee are treated as a single entity.").

¶68 *DeGraff*, Rule 41(b), and common law claim preclusion also often coincide. For example, an involuntary dismissal of an employee in a vicarious liability claim against the employer implicates *DeGraff* and aligns with Rule 41(b), because the employee's dismissal is "an adjudication on the merits." *See Anguiano*, 76 Ariz. at 250 (observing that "classifying dismissals according to the time and reasons for which they were granted" would "conjure up a hydra-headed monster in the field of procedure"). Similarly, *DeGraff* corresponds with claim preclusion when an employee is dismissed with prejudice in an action separate from the vicarious liability claim against the employer. *See, e.g.*, *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986).

27

¶69 The majority contends that overruling *DeGraff* will end courts' "wrestl[ing] with its illogic for decades." *Supra* ¶ 46. However, far from adding clarity to the law, the majority creates a legal distinction between two "types" of an identical phrase: "adjudication on the merits." Prospectively, courts must differentiate between an "adjudication on the merits" under Rule 41(b) and an "adjudication on the merits" that, in the majority's words, "go[es] to the merits." *See id.* What the latter "adjudication on the merits" embodies in the wide spectrum of case dismissals—from jury verdicts to court judgments to party settlements—is anyone's guess. The majority leaves our courts to wrestle with *this* "hydra-headed monster" in ensuing decades. *See Anguiano*, 76 Ariz. at 250.

## VI.

¶70 The majority asserts that we "do not even attempt to defend" *DeGraff's* "conclusory and faulty" legal reasoning. *Supra* ¶ 22. This characterization ignores the entire thrust of our dissent. *DeGraff*, and its shared logic and frequent intersection with Rule 41(b) and common law claim preclusion, dictate that Laurence's failure to prove the employee's liability forecloses a derivative action against SRP. *See Falcon ex rel. Sandoval v. Maricopa County,* 213 Ariz. 525, 527 ¶ 10 (2006) ("If a notice of claim is not properly filed within the statutory time limit, a plaintiff's claim is barred by statute. Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of ARS § 12-821.01(A)." (internal citation omitted)). If we were writing on a blank slate, perhaps we may agree with the majority, but that is not the posture in which we consider the issue. As the majority acknowledges in citing *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2177 (2019), *supra* ¶ 17, "[t]he doctrine of stare decisis reflects a judgment that in most matters it is more important that the applicable rule of law be settled than it be settled right," *id.* (cleaned up) (quoting *Agostini v. Felton*, 521 U.S. 203, 235 (1997)). This is precisely our point. *DeGraff* has been the law in Arizona for nearly eighty years and it should remain so because the majority has shown only its "mere disagreement" with the case and that its holding is debatable, not that it is clearly erroneous or manifestly wrong. *See Young*, 227 Ariz. at 6 ¶ 22.